DAVID WRIGHT, Plaintiff, *v.* NELSON B. ELDRED, Defendant.

*Flooding of lands, by direction of the legislature, for the purpose of supplying water to the canals — when the necessary steps, essential to the acquisition of the right so to do, will be assumed to have been taken — section 185 of 1 Revised Statutes, 250, only applies to hydraulic corporations who depend upon the canals for their supply of water — when a discretionary power conferred upon the superintendent of public works can be delegated to another.*

This action, brought by the plaintiff, the owner of a farm on the west side of Owasco lake, to recover damages alleged to have been caused by the erection of flush boards or gates on a dam at the outlet of the lake, was defended upon the ground that the right to thus obstruct the flow of the water in the outlet had been appropriated by the State for the purpose of supplying water to the Erie canal, under acts of the legislature authorizing the canal commissioners to appropriate to the State the dam then existing across the outlet, with the right to increase its height, or otherwise raise the water above it to such height as the commissioners should establish, and the right to draw water therefrom under such regulations as might from time to time be established by the canal commissioners, and under other acts making appropriations for the said work and for the building of a new dam, under which latter act the present dam was constructed and supplied with flush gates.

*Held,* that while it was not proved that action had been taken by the canal commissioners and drafts, plans or maps, etc , submitted to the canal board, having particular reference to the provisions of these acts, yet, as it did appear that the work proceeded and was consummated pursuant to subsequent legislation, it would be assumed that the legislature was informed as to, and had adopted that which had been done to effectuate what had been provided for.

The defendant's authority to act in the matter was derived from a letter, written by the assistant superintendent of public works, by the terms of which he was authorized or requested to close the gates when the water lowered sufficiently, and to open them temporarily when it should become necessary, the authority so given him by the assistant being approved by the superintendent of public works. The plaintiff claimed that the defendant was, by reason of the fact that he was a director and the superintendent of the Auburn Water-works Company, ineligible to the office under the provisions of section 185 of 1 Revised Statutes, 250, providing that no person owning any hydraulic works dependent upon the canals for their supply, or who shall be employed in or connected with any such works, shall be employed as superintendent, lockkeeper, collector of tolls, weighmaster or other agent upon the canals.

*Held,* that, as by the terms of the act conferring authority upon the State to make the appropriation, it was made subject to the use of the water for hydraulic purposes by the owners of such dam at the time of the appropriation, as the same should from time to time be drawn from the dam, and as the water-works com-

pany then had been and was taking its water from there, and had continued to do so since, it was not "dependent upon the canals" for their supply of water, within the meaning of the section of the Revised Statutes above cited, and that that section did not apply to the defendant or disqualify him from acting.

*Held,* further, that the relation given to the defendant by the letter of authority and assumed by him, did not come within the rule which does not permit a person charged with official duty or authority involving the exercise of judgment or discretion, or with an agency of personal trust and confidence, to delegate it to another, as applied to this case.

MOTION by plaintiff for a new trial on exceptions taken at the Cayuga Circuit, and ordered to be heard at the General Term in the first instance.

The action was brought to recover for injury to the plaintiff's premises, alleged to have been caused by the act of the defendant in setting water back onto them. The defendant, who was a director and the superintendent of the Auburn Water-works Company, attempted to justify his action by producing a letter written by the assistant superintendent, and approved by the superintendent of public works, authorizing him to do the acts complained of.

*H. V. Howland*, for the plaintiff.

*Charles M. Baker*, for the defendant.

BRADLEY, J.:

The plaintiff's farm is on the west side of Owasco lake, and the evidence tends to prove that by means of flush gates on the upper dam in the outlet of the lake the water was set back, raising it in the lake and outlet so as to injuriously affect the use of the plaintiff's land for productive purposes. And for such injuries, sustained in the years 1882 and 1883, he seeks to recover in this action. The defense is that the dam and the right to thus obstruct the flow of the water in the outlet had been appropriated by the State for the purpose of supplying water to the Erie canal, and that the defendant, in what he did, was acting under the authority of the officer of the State having the power to direct to be done the acts complained of. It appears that the State made provision for the improvement of the outlet of the lake in the years 1852, 1853 and 1854, but its purpose does not very clearly appear although it seems to have had some relation to the uses and purposes of the

State prison at Auburn. (Laws 1852, chaps. 193, 309; Laws 1853, chap. 175; Laws 1854, chap. 397.) By Laws of 1855 (chap. 539) there was an appropriation made to be expended under the direction of the canal commissioners in completing the improvement of the outlet, and by Laws of 1857 (chap. 524) it was provided that for the purpose of completing the improvement commenced pursuant to chapter 193 of Laws of 1852, before referred to, the canal commissioners were authorized to appropriate to the State the upper dam across the outlet, with the right to increase the height of the dam, or otherwise raise the water above it to such height as the commissioners should establish, and the right to draw water therefrom under such regulation as might from time to time be established by the canal commissioners, for which an appropriation was made. And the next year, to cover deficiency, a further appropriation was made for the purpose. (Laws 1858, chap. 328.) The evidence tends to prove that the State proceeded with the improvement pursuant to the provisions made by the acts referred to. Afterwards a portion of the dam was carried away. And by Laws of 1871 (chap. 778) an appropriation was made for the reconstruction of the race and feeder on the outlet, and by chapter 930 of the laws of the same year, a further appropriation was made for the construction of a bulkhead or other adequate structure in the outlet for the purpose of storing water in the lake for the use of the canal to be expended under the direction of the canal commissioners in charge of the middle division of the Erie canal. Pursuant to these provisions the dam was repaired and the work provided for done for the purpose mentioned, and flush boards about two feet in width were put on the dam.

By Laws of 1874, chapter 399, an appropriation was made to rebuild the dam on the outlet, pursuant to which there was a new dam constructed and supplied with flush gates two feet in height, which could be raised to let the water off or lowered to hold it back to that height above the crest of the dam.

It is contended by the plaintiff's counsel that it does not appear that there was any right or authority to put those flush boards or gates upon the dam, because no evidence is produced that the State proceeded to appropriate the dam and the right to thus raise the water, pursuant to the act of 1857, in the manner provided by the

statute. (1 R. S., 220, § 17.) While it was not proved that action was taken by the canal commissioners, and drafts, plans or maps, etc., submitted to the canal board, having particular reference to the provisions of the act of 1857, it does appear that the work proceeded and was consummated pursuant to subsequent legislation, which it may be assumed was had upon the legislative information and adoption of that which had been done for the purpose in view, and to effectuate what had been provided for. And the work that followed having been within legislative authority evinced by appropriations, etc., it will be deemed to have been within the requisite power of the State, and that with which its officers performing it were duly vested for the purposes of the question here. (*Baker* v. *Johnson*, 2 Hill, 342; *Turrell* v. *Norman*, 19 Barb., 263.)

The property appropriated was not that of the plaintiff, but his property was affected by the use of that taken by the State. And his remedy would seem to have been that of presenting and asserting his claim against the State in the manner which the statute permitted. It appears that the repair of the dam and providing the bulk-head and flush boards for it were done under the immediate direction of the canal commissioner having charge of the middle division of the Erie canal, and was done to supply water to the Port Byron level of that canal. And that the map, plan and estimated expense of the new dam of 1874 were made by the engineer and submitted to and adopted by the canal board; and that the work was advertised and the contract for its performance awarded and let by the canal commissioners. The plan of the work so made and submitted embraced that of the flush gates put upon the dam. The effect of the use of those gates is the cause of the plaintiff's complaint. For the purposes of this case it is unnecessary further to consider the power of the State under the statutes referred to, and its exercise, to make the use of the means so provided for storing the water in the lake for canal purposes.

It is, however, insisted, on the part of the plaintiff, that whatever may have been the authority of the superintendent of public works in making application and use of those flush gates, the defendant was without authority in that respect; and that he is liable for the consequences of his act in lowering or closing them, because: (1.) He was ineligible; and, (2.) The authority sought to be given him, and

which he assumed, was discretionary in character. The defendant's authority was derived from a letter of March 25, 1881, written him by the assistant superintendent of public works, by the terms of which he was authorized or requested to close the gates when the water lowered sufficiently, and to open them temporarily when it should become necessary. This letter was in answer to one from the defendant of the eighteenth of the same month, stating that all the gates were then raised ; and that if the assistant superintendent wished to delegate to him the authority to do so, he would close them when the water lowered sufficiently. It appears that into February, 1881, the gates remained closed, when the defendant raised them, as he says, upon his " own authority, for the protection of property." And he continued to have the charge of the flush gates, and they were raised and closed by his direction until February, 1884. The authority given him by the assistant had the approval of the superintendent of public works. The statute provides that no person owning any hydraulic works dependent upon the canals for their supply, or who shall be employed in or connected with any such works, shall be employed as superintendent, lock-keeper, collector of tolls, weighmaster, or other agent upon the canals. (1 R. S., 250, § 185.)

The purpose of this statute evidently was to exclude from the control or management of the canals all persons having interests adverse to those of the State in the use of the waters of the canals. And when the case of *Shaver* v. *Eldred* (38 Hun, 632) was before this court it was assumed that the water-works company was dependent for its supply of water upon the canal, or took water to which the canal was entitled, and that the defendant was within the class of persons excluded by the statute from the relation which his appointment purported to give him, and, therefore, could not lawfully take or exercise the discretionary power which the letter of authority seemed to give him. But it now appears, by the Laws of 1857 (chap. 524), that the appropriation authorized by that act to be made by the State was subject to the use of the water for hydraulic purposes by the owners of such dam at the time of the appropriation, as the same should from time to time be drawn from the dam. The water-works company then had been and was taking its water from there, and has continued to do so since ; and it is taken by means of a race-way over twenty feet wide, having its sill

five feet below the crest of the dam, and it is controlled independently of the dam although its supply is supported by it. It, therefore, seems that the water-works company does not take its supply from the canals within the meaning of the statute, and that its interest is not hostile to that of the State in that respect. It does not now appear, nor can it fairly be inferred from the record before us, that the interest of the defendant or of the water-works company, so far as related to the supply of water, was involved in the discretion with which he was apparently invested of determining when the gates should be opened or closed. The flush gates were provided to hold water above the crest of the dam solely for the benefit of the canal, and do not seem to have been required for the supply of the water-works company race-way; and it does not appear that, for the purpose of the continued supply of the company, it was necessary to hold the water, by way of storage at any time, to a height greater than the crest of the dam, nor does it appear that the company did not have and exercise the right to take its supply of water without reference to the needs of the canal or the condition of the water in it. These facts distinguish this from the Shaver case, as it was presented.

We think the relation given to the defendant by the letter of authority and assumed by him, did not come within the rule which does not permit a person charged with official duty or authority involving the exercise of judgment or discretion, or with an agency of personal trust and confidence to delegate it to another, as applied to this case. As before suggested it must upon the facts presented be assumed that the State had appropriated the right to maintain the flush gates two feet high upon the dam, and to retain the water which, when closed, they would hold back. The power given for the exercise of authority within such established right can hardly be treated as discretionary to the prejudice of a party affected by it.

The defendant did no more, and he may be deemed to have legitimately acted under the authority and direction of the superintendent of public works, and therefore incurred no personal liability. (*Waygoner* v. *Jermaine*, 7 Hill, 357.) The facility of raising and closing the gates was evidently provided that they might be raised temporarily in time of high water or flood, so as to permit the surplus water to pass off, and to be kept closed at other times. The

exercise of the discretion in raising them was to the advantage of those owning property above the dam along the lake, its inlet and outlet. The evidence does not permit the conclusion that the defendant acted in bad faith or unreasonably to the prejudice of property owners in the exercise of the authority vested in him, but it does appear that he raised the gates for the water of the spring and other freshets to pass off, and closed them when the high water subsided. And at all times in the exercise of his authority kept within the right appropriated by the State. The fact is evident that all the places along the canals, requiring attention and some discretion, cannot respectively have the constant personal care and direction of the superintendent and the three assistants whom, by the Constitution he is permitted to appoint, but such care and operation of many things requiring the exercise of some judgment must necessarily be left to persons employed for the purpose under and within general instructions; and such are the employment and authority in question, and the instructions within which the defendant has acted.

The plaintiff's claim for damages rests upon his challenge of the right of the State to use flush boards or gates of the height of two feet upon the dam. Whether the State is chargeable to him for the consequences thus occasioned to his land is a question not necessarily here for consideration. None of the exceptions seem to have been well taken.

The motion for a new trial should be denied, and judgment ordered on the verdict for the defendant.

HAIGHT, J., concurred; SMITH, P. J., not voting; BARKER, J., not sitting.

Motion for new trial denied, and judgment ordered for the defendant on the verdict.